**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

DEC 0 2 2015

BY
DEPUTY _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 9:15cr 24 |
| | § | |
| | § | JUDGE Schneider / Hawthorn |
| WALTER DIGGLES (01) | § | |
| ANITA DIGGLES (02), | § | |
| ROSIE DIGGLES (03). | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

## COUNT ONE

Violation:  18 U.S.C. § 1349, § 1343
(Conspiracy to commit wire fraud)

### A.    Introduction

At all times material to this Indictment:

The Defendants

1.    Walter Diggles was the husband of Rosie Diggles and the father of Anita Diggles.

He resided in the City of Jasper, Texas.  Walter Diggles was employed as the Executive

Director for the Deep East Texas Council of Governments, which had offices located at

210 Premier Drive, Jasper, Texas, and 118 South First Street, Lufkin, Texas, both located

in the Eastern District of Texas.  Walter Diggles was also the pastor of the New

Indictment - Page 1

Lighthouse Church of God in Christ ("Lighthouse Church") located at 1013 Helen Street, Jasper, Texas, 75951, also located within the Eastern District of Texas.  Walter Diggles also was the registered agent of the Deep East Texas Foundation and was active in the Foundation's affairs.  The offices of the Deep East Texas Foundation were located in the Lighthouse Church, within the Eastern District of Texas.  It was his position and authority with these entities that furthered the conspiracy and allowed it to succeed.

2.       Rosie Diggles was the wife of Walter Diggles and resided in Jasper, Texas. She was a member of the Lighthouse Church and worked in the church.

3.       Anita Diggles was the daughter of Walter Diggles and resided in Houston, Texas. She was a member of the Lighthouse Church and worked in the church.

4.       In addition to the above, several individuals conspired with, and aided and abetted, the conspiracy and other acts set forth in this indictment.  These individuals were either employed at the DETCOG or with the Deep East Texas Foundation.  They are referred to as Unindicted Co-conspirators One, Two, Three, and Four in this Indictment.

Entities

The Deep East Texas Council of Governments

5.       The Deep East Texas Council of Governments ("DETCOG") was a political subdivision of the State of Texas and was an association of local governments (such as cities and counties) within a twelve county, Deep East Texas region.  DETCOG received federal, state, and local grant funds to finance and administer several programs for the

benefit of individuals living in the Deep East Texas region.  In order to finance and administer these programs, DETCOG contracted with other governmental, not-for-profit, and private business entities. One such entity was the Deep East Texas Foundation.

The Deep East Texas Foundation

6.     The Deep East Texas Foundation ("Foundation") was a Texas non-profit corporation created on August 15, 2005. The initial board of directors for the Foundation included Unindicted Co-conspirators Numbers Three and Four, along with others known to the Grand Jury.  Unindicted Co-conspirators Number Three and Four were employees of the Deep East Texas Foundation.  Walter Diggles was the registered agent for the Foundation, and the registered address for the Foundation was the same as Diggles's residence address in Jasper, Texas. Walter Diggles had signature authority on the Foundation bank account maintained at First National Bank-Jasper (located in the City of Jasper, Texas, in the Eastern District of Texas) (hereinafter "First National Bank-Jasper").

7.     The Texas Secretary of State forfeited the Foundation's charter in or about 2007. In spite of this, the Foundation continued to conduct operations, and from 2007 through 2012, the Foundation's operating funds came almost entirely from DETCOG through federal Social Services Block Grant ("SSBG") funding.  During the period of 2007-2012, the Foundation received approximately $4.4 million in SSBG federal funds through this program.

8.     Walter Diggles was not only the executive director of DETCOG, but had extensive involvement in the affairs of the Foundation.  In fact, Walter Diggles had direct input into the agenda of the Foundation; sometimes participated in Foundation meetings; and would sometimes refer persons to the Foundation for services.  Additionally, he had the authority to decide who would receive money from or services paid for by the Foundation and who did not.

The New Lighthouse Church of God in Christ

9.     The Lighthouse Church was located at 1013 Helen Street, Jasper, Texas 75951. Walter Diggles was the pastor and superintendent of the Lighthouse Church, and Rosie Diggles and Anita Diggles were members. The Lighthouse Church had fewer than 40 active parishioners, and the majority of funds received by the church during the period of 2007-2012 were SSBG federal funds that flowed from the federal treasury, to DETCOG, to the Foundation, and then to the Lighthouse Church. In most months during this period, the church would have been unable to pay its mortgage, gas, electric, and insurance bills without the SSBG funds.

Accounts at First National Bank-Jasper

10.     DETCOG, the Foundation, and the Lighthouse Church all conducted their banking at First National Bank-Jasper. Walter Diggles was on the board of First National Bank-

Jasper and received monthly payments from First National Bank-Jasper for his board service.

11.     Walter Diggles had single-signature authority on the Foundation's bank account at First National Bank-Jasper. The other authorized signers on the Foundation bank account were Unindicted Co-conspirator Number Three and Unindicted Co-conspirator Number Four.

12.     The Lighthouse Church maintained four bank accounts at First National Bank-Jasper:  an account for the church in general (the "Main Church Account"); an account for the "Youth Department" (LYD); an account for the "Music Department" (LMD); and an account for "Heart to Heart Ministries" (H2H).

Social Services Block Grant Funds

13.     DETCOG distributed federal SSBG funds to the Foundation from in or about November 2006 through in or about July 2012.  These funds were appropriated by the United States Congress as a part of the disaster recovery following Hurricanes Rita, Katrina, Ike, and Dolly and were meant to support hurricane recovery in Texas and other affected states.

14.     In order to receive SSBG funds related to Hurricanes Rita and Katrina, in or about August 2006, DETCOG entered into a contract with the Texas Health and Human Services Commission, an agency of the State of Texas (the "Rita/Katrina" contract). Walter Diggles signed this contract on behalf of DETCOG, as DETCOG's Executive

Director.  This contract was amended four times as more SSBG funds were made

available by Congress.  The SSBG funds made available by this contract were limited to

reimburse entities that spent money providing goods and services for specific purposes

and were payable after the services were rendered and the goods purchased.

15.     On or about June 18, 2009, DETCOG entered into another SSBG contract with the

Texas Health and Human Services Commission, this time related to disaster relief funds

for Hurricanes Ike and Dolly (the "Ike/Dolly" contract).  Walter Diggles signed the

contract on behalf of DETCOG, as DETCOG's Executive Director.  The Ike/Dolly

contract was effective on or about June 18, 2009.  The Ike/Dolly contract was amended

once.  The SSBG funds made available by this contract were limited to reimburse entities

that spent money providing goods and services for specific purposes and were payable

after the services were rendered and the goods purchased.

16.     By November 2010, DETCOG had used all of the SSBG funds that the Texas

Health and Human Services Commission had authorized for DETCOG's use.  After this,

on or about April 1, 2011, DETCOG entered into a contract with the Houston-Galveston

Area Council of Governments ("HGACG") to use SSBG funds that HHSC had

authorized for HGACG, but which HGACG had not used. The SSBG funds made

available by this contract were limited to reimburse entities that spent money providing

goods and services for specific purposes and were payable after the services were

rendered and the goods purchased.

17.     After Congress made the SSBG funds available, the Foundation and other entities located in the Deep East Texas region applied to DETCOG for SSBG funds.  Walter Diggles hired an individual to work at the Foundation to prepare the Foundation's application for grant funds, and this individual prepared the application.  On or about November 7, 2006, the Foundation submitted this grant fund application to DETCOG. This Foundation application requested a total of approximately $865,000.00 in SSBG funds from DETCOG.  After receiving the application, a committee at DETCOG reviewed the application and approved it, but only for the amount of approximately $500,000.00 in SSBG funds.  The DETCOG executive board then voted to approve the funding request submitted by the Foundation.

18.     On or about April 1, 2007, DETCOG and the Foundation entered into a "Vendor Agreement" controlling the manner in which the Foundation would provide  services to the public and would request SSBG fund reimbursement. This vendor agreement was signed by Unindicted Co-conspirator Number Three on behalf of the Foundation and by Walter Diggles as Executive Director of DETCOG.  Later, the Foundation applied for additional SSBG funds after Congress made a second appropriation of funds related to Hurricanes Ike and Dolly, and DETCOG approved the Foundation's application. On or about October 27, 2009, the Foundation and DETCOG entered into another Vendor Agreement related to the Foundation's provision of services qualified for SSBG funds appropriated as a result of Hurricanes Ike and Dolly.  This vendor agreement was also

signed by Unindicted Co-conspirator Number Three on behalf of the Foundation and by

Walter Diggles as Executive Director of DETCOG.

19.     The SSBG federal funds were available to the Foundation as reimbursement of

actual costs that the Foundation incurred in operating an approved social services

program.  In total, the Foundation received approximately $4.4 million in SSBG federal

funds from DETCOG.  During the time frame of the conspiracy, the Lighthouse Church

did not have enough contributions from members to allow the church to function.

Because of this, a substantial amount of the SSBG funding that flowed from the

Foundation to the Lighthouse Church was used to keep the church functioning or for

personal purposes and expenses by the conspirators, as opposed to providing services and

goods to persons who had been adversely affected by the hurricanes.

Wire Communications and Transfers Central to the Conspiracy

20.     During the course of the conspiracy, the Foundation would submit written requests

for SSBG federal funds based on amounts that the Foundation had allegedly spent in

providing social services; however, these amounts were frequently misrepresented and

inflated, as described below.  DETCOG staff would then review the application and

approve it or make modifications and then approve it. Walter Diggles was the final

reviewer for the requests and had to approve all DETCOG expenditures over $300.00.

After DETCOG approved the payment of SSBG funds to the Foundation, Walter Diggles

or a DETCOG employee at his direction and with his authorization would prepare and

submit a purchase voucher requesting SSBG funds to the Texas Health and Human

Services Commission ("HHSC").  These purchase vouchers usually included not only

SSBG funds requested by the Foundation, but requested by other unrelated entities as

well.  Walter Diggles or another DETCOG employee at his direction would e-mail and

mail the DETCOG purchase vouchers to the Texas HHSC, addressed to an individual

who worked for the HHSC in Austin, Texas.

21.     From in or about November 2006 to November 2009, DETCOG was required to

submit a Financial Status Report to the HHSC along with each purchase voucher seeking

SSBG funds.  The Financial Status Reports were signed by Walter Diggles and included

the following statement: "I certify to the best of my knowledge and belief that this report

is correct and complete and that all outlays and unliquidated obligations are for the

purposes set forth in the award documents." This statement was false and contained the

following material misrepresentations:  the "total outlays" portion of this form was false,

which the Foundation had included false and inflated figures in its request for SSBG

funds, and DETCOG had approved; and some of the outlays and unliquidated obligations

were not for the purposes set forth in the award documents, but were for personal use and

expenses.

22.     Starting in November 2009, DETCOG submitted purchase voucher forms to the

HHSC that contained the following certification, signed by Walter Diggles:

> The COG officer executing this invoice represents that the amount set forth
> in this invoice pertains only to SSBG Allowable Services that have been

performed or delivered in accordance with the terms of the SSBG Agreement.  The COG officer further represents that any and all supporting information, including adequate evidence substantiating expenses billed for home repairs, has been received from COG's sub-grantees / contractors and the COG has completely verified the supporting information / evidence received from the sub-grantees / contractors to justify the amounts set forth in this invoice.

This statement was false and a material misrepresentation because the Foundation's requests for reimbursement were inflated and overcharged for costs, as alleged elsewhere in this Indictment; DETCOG did not completely verify the supporting documentation to justify the amount included in the invoice to the HHSC; and the amount set out in the purchase vouchers for the Foundation did not pertain only to SSBG allowable services, but included requests for reimbursement far in excess of the amounts actually spent in case management and after-school programs, as well as other programs for which the Foundation sought SSBG funds.

23.     The individual at the Texas HHSC who received the Foundation purchase vouchers and financial status reports would review the requests, approve them for payment, then e-mail or deliver the requests to the accounts payable section at Texas HHSC, where another individual would review the request and enter the reimbursement request information into a database.

24.     Once the HHSC accounts payable section approved the request for SSBG funds and loaded the information into a database, the Texas Comptroller's office made an electronic "draw" request for funds from the United States Treasury.  The SSBG funds

that were appropriated by Congress for hurricane relief were then electronically

transferred from a federal treasury account in the State of Virginia to a bank account

maintained for the benefit of the Texas Comptroller and located within in the State of

Texas. The SSBG funds were then electronically transferred at the direction of the Texas

Comptroller to the DETCOG bank account at First National Bank - Jasper. Once the

funds were received in the DETCOG bank account, DETCOG would write a check

payable to the Foundation. All of the SSBG federal funds that DETCOG requested from

HHSC, which DETCOG received and distributed to the Foundation, as alleged in this

Indictment, were transmitted by electronic transfers in this manner.

**B.      The Purpose and Scope of the Conspiracy**

25.      From in or about November 2006 to in or about July 2012, in the Eastern District

of Texas, defendants Walter Diggles, Anita Diggles, Rosie Diggles, and Unindicted Co-

conspirators Numbers One - Four knowingly devised and intended to devise a scheme to

defraud the United States, and to obtain money and property by means of false and

fraudulent material pretenses, representations, and promises, and for the purpose of

executing the scheme and artifice, and attempting to do so, transmitted and caused to be

transmitted by way of wire communication in interstate commerce writings, signs, and

signals, and did so with a specific intent to defraud, and further this violation occurred in

relation to, and involving a benefit authorized, transmitted, transferred, disbursed, and

paid in connection with, a presidentially declared major disaster and emergency as those

terms are defined in Section102 of the Robert T. Stafford Disaster Relief and Emergency

Assistance Act (42 U.S.C. § 5122), and affected a financial institution, all in violation of

18 U.S.C. § 1349 and 1343.

26.     The purposes and objects of the conspiracy included:  preparing documentation

with material misrepresentations related to programs provided by individuals associated

with the Foundation and the Lighthouse Church; delivering the documentation that

included material misrepresentations to DETCOG in order to request reimbursement for

the social services programs; DETCOG reviewing the documentation and approving

payment of federal SSBG funds to the Foundation;  DETCOG requesting federal SSBG

funds from the Texas HHSC or Houston-Galveston Area Council of Governments based

on the Foundation's documentation; the federal treasury transmitting federal SSBG funds

by wire from the federal treasury to the State of Texas; the Texas Comptroller's Office

directing electronic funds transfer of the federal SSBG funds from a bank account in

Texas to DETCOG's account in the First National Bank-Jasper account; DETCOG

writing and delivering checks to the Foundation out of the federal SSBG funds that

DETCOG had received by wire transfer; the Foundation disbursing funds to the benefit

of the conspirators, by check, withdrawal, and transfer of funds to other bank accounts;

and the conspirators receiving benefit and use of the SSBG federal funds that had been

disbursed by the Foundation to other accounts associated with the Lighthouse Church.

**C.     The Manner and Means of the Conspiracy**

It was part of the scheme that:

27.     Between 2007 and 2012, DETCOG paid over $4.4 million in SSBG funds to the

Foundation. These funds account for about 99 percent of the funds deposited into the

Foundation's bank account during this same time period. The Foundation's only offices

were located inside Lighthouse Church, of which Walter Diggles was the Pastor and

Superintendent.  In turn, the Foundation paid over approximately $531,000.00 in SSBG

funds to the Lighthouse Church main bank account at First National Bank – Jasper, from

in or about 2007 through 2012.  Further, the Foundation paid over approximately

$1,000,000.00 in SSBG funds to the Youth Department account at the First National

Bank – Jasper, Texas, from in or about 2007 through 2012.

The Afterschool Program (a/k/a the "21st Century Community Learning Center")

28.     In or about 2006-2012, individuals working in the Lighthouse Church operated an

after-school program called the "21st Century Community Learning Center," sometimes

referred to as the "Century 21 Program."  The program was purportedly designed to help

troubled adults with little education to get their GED and find housing and jobs. It was

also purportedly designed to help at-risk teens and younger children by providing

mentors and tutors to help them with class work and to provide after-school activities for

students.

29.     Several individuals acted as tutors or employees within the 21st Century

Community Learning Center program and were paid by the hour.  During a meeting that

took place early in the program, Walter Diggles told individuals working in the 21st Century Community Learning Center program that if anyone should ask, the workers were to say that they were volunteers because under the program the workers were not to be paid wages. Anita Diggles and Rosie Diggles administered the program.

30.     As with other programs receiving SSBG funds, SSBG reimbursement was limited to the amount of money that the Foundation had actually spent related to the 21st Century Community Learning Center program.

31.     From in or about late 2006 until sometime in 2007, the workers in the 21st Century Community Learning Center program were paid with checks drawn on the Lighthouse Church main bank account.  Thereafter, the workers received some pay checks drawn on the Foundation bank account. Later, payment for workers came from a mixture of checks from the Foundation bank account and the Lighthouse Youth Department bank account. All of these accounts were at the First National Bank-Jasper.

32.     Rosie Diggles, Anita Diggles, and others would prepare documents and reimbursement packets to support the Foundation's request that SSBG funds be paid to the Foundation to reimburse the costs of the 21st Century Community Learning Center program.  These reimbursement packets included a coversheet that totaled up and categorized the amount of SSBG funds sought from the DETCOG.  Unindicted Co-conspirator Number Three signed some of these cover sheets on behalf of the Foundation. After they were assembled, the packets would be delivered or taken to DETCOG.

33.     Although the SSBG funds were limited to repayment of funds actually spent by the Foundation, Rosie Diggles and Anita Diggles would prepare the reimbursement paperwork requesting payment of SSBG funds well in excess of the actual amounts spent on the 21st Century Community Learning Center program.  The paperwork included requests that DETCOG pay the Foundation based on a "unit" of teacher or tutor time, which was an hour, but these requests were inflated beyond the actual amounts spent in the program because the hourly rate actually paid to the teachers and employees was far less than that represented to DETCOG.  For example, certified teachers in the 21st Century Community Learning Center program were paid $15 - $17 per hour, but the SSBG reimbursement packets prepared by Rosie Diggles and Anita Diggles would request payment for certified teachers at the rate of $110-$144 per unit, with each unit being an hour.  In this way, the actual costs of the program were materially misrepresented and falsely exaggerated when the requests were submitted to DETCOG and when the SSBG reimbursements were authorized by DETCOG.

34.     Unindicted Co-conspirator Number Two was an employee at DETCOG.  She would review the Foundation reimbursement packets requesting payment of SSBG funds and would either approve the application as submitted or make adjustments to the requested amounts.  Then she would forward the packet to the finance department within DETCOG.  On some occasions, Unindicted Co-conspirator Number Two would increase the unit rate on reimbursement packets that the Foundation submitted, thus increasing the amount of SSBG funds to be paid to the Foundation.  Within the finance department,

Unindicted Co-conspirator Number One, who was a DETCOG employee, would review and code the request for reimbursement and then forward it to the DETCOG controller and Walter Diggles for final authorization.  Within DETCOG, only Walter Diggles, as the Executive Director, had authority to authorize a payment of DETCOG funds in excess of $300.00.   In this role, Walter Diggles approved all payments by DETCOG of SSBG federal funds that were made to the Foundation.  DETCOG would request SSBG funds from the Texas HHSC, and these funds would be electronically transferred from a bank in the State of Virginia to an account maintained by the Texas Comptroller in Texas, and then electronically transferred to the DETCOG bank account at First National Bank – Jasper.  After DETCOG received SSBG funds from the Texas HHSC, it would disburse these funds to the Foundation.  At this point, the Foundation would either write a check to the Lighthouse Church Youth Department or would use the funds to pay for other expenses on behalf of the Foundation or the Lighthouse Church.  These deposits by the Foundation included, for example, the following deposits into the Lighthouse Youth Department account:

| DATE (ON OR ABOUT) | MONETARY TRANSACTION | AMOUNT |
|---|---|---|
| April 18, 2011 | Deposit of check number 6618, drawn on Deep East Texas Foundation account number _____5293, into Lighthouse Church Youth Department account number _____0815, both accounts being held at the First National Bank, Jasper, an FDIC-insured institution | $14,561.40 |

| DATE (ON OR ABOUT) | MONETARY TRANSACTION | AMOUNT |
|---|---|---|
| June 3, 2011 | Deposit of check number 6722, drawn on Deep East Texas Foundation account number _____5293, into Lighthouse Church Youth Department account number _____0815, both accounts being held at the First National Bank - Jasper, an FDIC-insured institution | $16,590.90 |
| September 6, 2011 | Deposit of check number 6919, drawn on Deep East Texas Foundation account number _____5293, into Lighthouse Church Youth Department account number _____0815, both accounts being held at the First National Bank - Jasper, an FDIC-insured institution | $30,445.65 |
| October 11, 2011 | Deposit of check number 6983, drawn on Deep East Texas Foundation account number _____5293, into Lighthouse Church Youth Department account number _____0815, both accounts being held at the First National Bank - Jasper, an FDIC-insured institution. | $10,358.70 |

Case Management Services Program

35.    During the period of the conspiracy, the Foundation also operated a case

management services program (CMS).  In this program, individuals living in the Deep

East Texas area would either come to the Foundation's office at Lighthouse Church or

would call the Foundation and talk to a case manager.  Individuals who needed assistance

with home repairs would fill out an application, or would be assisted in doing so, and the

Foundation would arrange for someone to travel to their homes to evaluate their needs.

Other types of social services needs, such as assistance with utility bills, would also be handled by the Foundation's CMS program. The Foundation board, which included Unindicted Co-conspirator Number Three, Unindicted Co-conspirator Number Four, and others known to the Grand Jury, would consider applications for assistance and determine who would receive assistance. While Walter Diggles was not officially on the board, he sometimes attended board meetings, was consulted by Foundation employees related to Foundation decisions, and was involved in the Foundation board decision-making process.

36.    After providing case management services, individuals working at the Foundation would prepare requests for reimbursement paperwork and Unindicted Co-conspirator Number Three would sign a cover sheet requesting reimbursement of expenses from DETCOG. As with other programs receiving SSBG funds, SSBG reimbursement was limited to the amount of money that the Foundation had actually spent related to the case management services program.

37.    The requests for reimbursement that the Foundation submitted to DETCOG for case management services were inflated far beyond their actual amount of expenses for the program by use of a unit-billing scheme. In this aspect of the scheme, the case management services counselors who worked at the Foundation were paid $8.00 per hour or $10.00 per hour. The requests for reimbursement signed by Unindicted Co-conspirator Number Three, however, materially and falsely misrepresented that the CMS workers

had been paid at the rate of $80.00 - $144.00 per hour and sought these inflated amounts in SSBG federal funds.

38.     The Foundation requests for SSBG funds were taken or delivered to DETCOG and, employing the same methods described above in Paragraph 34, DETCOG and Walter Diggles would process the requests and secure SSBG federal funds. After receiving the SSBG funds from DETCOG, the Foundation would use the funds to pay the CMS case managers or pay expenses on behalf of the Foundation or the Lighthouse Church.

The Summer 2010 Program Scheme

39.     Another aspect of the conspiracy involved a scheme to inflate claimed expenses for summer activity programs that took place at the Lighthouse Church. From on or about June 7, 2010, until on or about July 29, 2010, the Foundation submitted requests for reimbursement of SSBG funds to DETCOG. These requests for reimbursement included paperwork prepared by Rosie Diggles and Anita Diggles. Within this paperwork, these defendants claimed reimbursable expenses in the amount of $20.00 per child per day for each child who attended the summer program for several weeks during the summer of 2010. The paperwork also claimed transportation fees in the amount of $10.00 per child for each day, defined as transportation costs to and from the Lighthouse Church. The packets that were submitted by the Foundation included attendance sheets showing student names, subjects, "signatures" of students, and transportation indicators.

Walter Diggles approved and DETCOG paid the sum of $109,865 in SSBG federal funds

to the Foundation for the summer, 2010 program, when the actual costs of the program

were no more than approximately $74,704.76.

The Summer 2011 Program Scheme

40.     During the summer of 2011, the conspirators again engaged in a scheme to inflate

claimed expenses for summer activity programs that took place at the Lighthouse Church.

From on or about July 11, 2011, until on or about August 11, 2011, the Foundation

submitted requests for reimbursement of SSBG funds to DETCOG.  These requests for

reimbursement included paperwork prepared by Rosie Diggles and Anita Diggles.

Within this paperwork were included education and training charges, at the rates of

$110.00, $96.00, or $55.00 per unit (each unit being an hour), based on the tutor's alleged

qualifications. The reimbursement packets also included a per-student charge of $11.00

per day.  Unindicted Co-conspirator Number Three signed the requests for

reimbursement on behalf of the Foundation.  Walter Diggles approved and DETCOG

paid approximately $55,198.60 in SSBG funds to the Foundation for the summer 2011

program, when the actual costs of the program were no more than approximately

$38,000.00.

The Transportation Scheme

41.     In addition to the above, the conspiracy also involved a scheme in which the

conspirators inflated claimed expenses for transportation expenses related to driving

children to and from the 21st Century Community Learning Center program described

above. This aspect of the scheme involved driving students in vans from their schools to

the Lighthouse Church and then driving them home after the after-school activities were

over. The Foundation requested reimbursement in the amount of $5.00 per student, per

trip, adding up to $10.00 per student per day. The paperwork used to request

reimbursement claimed that as many as one hundred twenty-five students were

transported in a single day to the Lighthouse Church and then transported to their homes

after the program activities.   In this way, during the months of September 2009 through

May 2010, the conspirators were able to greatly inflate the costs of the transportation

provided to the students. For example, during the period between on or about September

20, 2009, to May 2010, the Foundation requested that DETCOG pay SSBG funds to the

Foundation in the sum of $109,121.00 for transportation costs. During this same period,

the Foundation actually paid out approximately $8,337.30 for transportation costs, such

as costs of gas and oil changes.

East Texas Fellowship of Churches 2009 Conference

42.     In addition to the above, Walter Diggles and the co-conspirators requested and

mis-applied SSBG funds related to "conferences" held at the Lighthouse Church.  These

conferences were purportedly meetings of an organization of churches located in East

Texas called the East Texas Fellowship of Churches.  In or about July 2009, the East

Texas Fellowship of Churches held a conference at the Lighthouse Church, where Walter

Diggles was pastor.  On or about November 21, 2009, Walter Diggles asked Unindicted

Co-conspirator Number Two in writing to secure SSBG federal funds reimbursement of

at least $5,000.00 to cover the costs of the conference.   The paperwork that Unindicted

Co-conspirator Number Two prepared for this reimbursement noted a registration fee of

$10.00 per person who attended the conference in July 2009.  Conference attendee sign-

in sheets used by DETCOG to support payment of SSBG funds included information

such as names, addresses, birthdates, and some phone numbers of attendees.  Also

included were blanks for the various types of sessions that would be held at the

conference, such as drug intervention, single parenting skills, mentoring, and tutoring.

According to the paperwork, some of the attendees were minors at the time of the

conference. The paperwork that Unindicted Co-conspirator Number Two prepared stated

that the request for SSBG funds was to "assist in covering overhead costs for preparation

of the conference, speakers, supplies and materials" and consisted of a separate $48.00

fee for each conference session attendees attended, for a total of $8,928.00.  This

paperwork was prepared by Unindicted Co-conspirator Number Two, reviewed and approved by Unindicted Co-conspirator Number One, and DETCOG and Walter Diggles approved payment of $8,928.00 in SSBG federal funds to the Foundation for this conference.  DETCOG requested SSBG funds from HHSC, and after this received the SSBG federal funds from the Texas Comptroller, in the manner more specifically described above in this Indictment. On or about December 4, 2009, DETCOG wrote a check payable to the Foundation in the amount of $8,928.00. On or about December 8, 2009, the Foundation wrote a check payable to the "East Texas Fellowship of Churches" in the amount of $8,928.00, but this check was deposited into the Lighthouse Church main account.  Walter Diggles endorsed this check with the words "East Texas Fellowship of Churches" and "Lighthouse COGIC."

43.     The above request for reimbursement took place despite the fact that, before the conference, on or about July 7, 2009, Walter Diggles wrote, and Unindicted Co-conspirators Number Three and Four signed, a Foundation check payable to the Lighthouse Church in the amount of $12,000.00, with the words "ET Conference Sponsorship" in the memo line.  This check was written without any evidence that the Foundation or the Lighthouse Church had incurred expense related to a conference in this amount.

The 2010 Scheme for Payment of Fictitious Conference and Volunteer Expenses

44. In December 2010 the conspirators also engaged in a scheme to secure SSBG funds

based on false statements about conference expenses that did not exist.  On or about

December 13, 2010, Walter Diggles as Executive Director of DETCOG stated in an e-

mail to DETCOG employees and Unindicted Co-conspirator Number Three that he could

recommend reimbursement of registration for conference sessions at the rate of "$96.00

per unit" and reimbursement of "volunteer hours" at the cost of "12.50 per unit."

Unindicted Co-conspirator Number Three signed a letter on or about December 14, 2010,

in which he stated that the Foundation had provided 2,500 "volunteer hours of

unreimbursed services" to hurricane victims.  The documentation related to DETCOG's

authorization for SSBG reimbursement stated that the services were provided between

October 1, 2008, and September 30, 2009.  But this documentation consisted of

photocopies of almost all of the same sign-in sheets that DETCOG used for the July 2009

conference, described above in this Indictment, and for which the Foundation had already

received payment of SSBG federal funds. The attendance sheets included with the

December 2010 request had, however, been altered and had information changed and

added to them, including the number of presentations the individual attendees had

purportedly attended in 2009.  The sheets still had information on them such as names,

addresses, birthdates, and some phone numbers of attendees.  DETCOG did not receive

· an actual request from the Foundation for SSBG funds related to this scheme, and the

original attendance sheets that were copied were already in possession of DETCOG when the SSBG funds were authorized.

45.     Based on the recycled and altered copies of the attendance sheets, DETCOG and Walter Diggles authorized the expenditure of SSBG funds to the Foundation.  On or about December 17, 2010, DETCOG wrote a check consisting of SSBG federal funds payable to the Foundation in the amount of approximately $39,000.00, consisting of approximately $148.00 per session allegedly attended at the purported conference.  This check was deposited into the Foundation account, and on or about December 20, 2010, Unindicted Co-conspirator Number Three wrote a Foundation check payable to the Lighthouse Church in the amount of $39,000.00 with the words "At risk youth" in the memo line.  This check was deposited into the Lighthouse Church main account on or about December 20, 2010.  On or about December 21, 2010, Walter Diggles wrote two checks on the Lighthouse Church main account each in the amount of $7,000.00, and each payable to the Foundation, for a total of $14,000.00.  Unindicted Co-conspirator Number Three endorsed both of these two checks for deposit into the Foundation bank account.  This series of transactions resulted in a net deposit of $25,000.00 of SSBG federal funds into the Lighthouse Church account.

East Texas Fellowship of Churches 2012 Conference

46.     In or about July 2012, the conspirators also engaged in a scheme to secure SSBG funds based on false statements about conference expenses that did not exist.  In or about

July 2012, the East Texas Fellowship of Churches held a conference at the Lighthouse

Church. As part of the conference, basic health screenings including blood pressure

readings and blood glucose level checks were performed. The actual total cost of the kits

for all of the screening tests was approximately $112.00; this cost was paid by check

drawn on the Lighthouse Church Youth Department account.

47.     One of Walter Diggles' sisters was a nurse, and she assisted in providing the

health screenings during the conference.  After the conference was over, the Foundation's

request for SSBG reimbursement sought $50.00 as a registration fee for each of the 77

participants at the conference and sought an additional $144.00 per person for health

screenings for each of 61 persons who purportedly received a health screening during the

conference.  DETCOG and Walter Diggles approved the payment of SSBG federal funds

for this request, requested SSBG funds from HHSC, and then received the SSBG funds

from the Texas Comptroller. On or about July 13, 2012, DETCOG wrote a check payable

to the Foundation in the amount of $12,746 (consisting of SSBG federal funds) as

reimbursement for the conference—in spite of the fact that nothing close to this amount

was spent by the Foundation related to the conference.  This check was endorsed with the

words "DET Foundation" and with the name of Unindicted Co-conspirator Number

Three.  The check was deposited into the Foundation account.

48.     After the Foundation received the SSBG funds, on or about July 24, 2012,

Unindicted Co-conspirator Number Three wrote a check on the Foundation account

payable to the East Texas Fellowship Conference in the amount of $2,000.00; Walter

Diggles endorsed this check with the words "East Texas Fellowship" and "Lighthouse" and deposited it into the Lighthouse Church general account on or about August 16, 2012.  Additionally, on or about July 24, 2012, Unindicted Co-conspirator Number Three wrote a check on the Foundation account payable to the Lighthouse Church in the amount of $500.00; Walter Diggles endorsed this check with the word "Lighthouse" and deposited it into the Lighthouse Church general account on or about August 16, 2012. On or about July 24, 2012, Unindicted Co-conspirator Number Three also wrote a check in the amount of $7,500.00 on the Foundation account payable to a health care business operated by Walter Diggles's sister. This check never made it to Walter Diggles's sister. Instead, Walter Diggles endorsed the back of the check with the name of his sister's business and "Lighthouse Church" and deposited the check in the Lighthouse Church account on or about August 16, 2012.

## Diversion of SSBG Funds

49.     As part of the scheme, on multiple occasions Walter Diggles diverted SSBG federal funds payable to and meant for the Foundation.  On or about September 12, 2008, Walter Diggles presented a DETCOG check to the First National Bank - Jasper, a bank insured by the Federal Depository Insurance Corporation (the "FDIC").  This check was written on the DETCOG account, consisted of federal SSBG funds, and was made payable to the Foundation in the amount of $62,683.60.  Diggles directed that the check be deposited and split between two accounts—the Foundation account and the

Lighthouse Church main account. Walter Diggles deposited $32,683.60 into the Foundation account and deposited the remaining $30,000.00 in the Lighthouse Church main account.

50.     On or about April 18, 2009, Walter Diggles again presented a DETCOG check for deposit to the First National Bank – Jasper (Texas).  This check was written on the DETCOG account, consisted of federal SSBG funds, and was made payable to the Foundation in the amount of $64,237.88.  Diggles endorsed the check with the words "Deep East Texas Foundation" and "Walter Diggles."  After endorsing this check, Walter Diggles directed that the deposit be split between two accounts—the Foundation account and the Lighthouse Church main account.  This check was in fact deposited in accordance with his instructions: $14,237.88 into the Foundation account and the remaining $50,000.00 in the Lighthouse Church main account.

51.     On or about August 17, 2009, Walter Diggles again presented a DETCOG check for payment to the First National Bank - Jasper.  This check was written on the DETCOG account, consisted of federal SSBG funds, and was made payable to the Foundation in the amount of $17,503.03.  Diggles endorsed the check "Lighthouse COGIC" and deposited it along with other checks directly into the Lighthouse Church main account.

Payments to the Benefit of DETCOG Employees

52.     In or about October 2011, Unindicted Co-conspirator Number One's step-daughter did not have enough money to pay for her college tuition.  On or about October 11, 2011,

personnel at DETCOG added the amount of $2,164.80 as a line item for "Education" to a Foundation request for reimbursement, along with documentation showing the amount of tuition due. Unindicted Co-conspirator Number Two approved the Foundation SSBG funds request as modified, and DETCOG and Walter Diggles approved the payment of SSBG funds for this purpose and in this amount. This was despite the fact that SSBG funds were not allowed to be used to pay college tuition. DETCOG requested the SSBG funds from the Texas HHSC and the Texas Comptroller electronically wired the funds to DETCOG's account, in the manner described above in this Indictment. On or about October 14, 2011, DETCOG wrote a check payable to the Foundation in the amount of approximately $15,577.60, and after depositing this check on or about October 19, 2011, the Foundation wrote a check payable to the Lighthouse Church in the amount of $14,500.00, which was deposited into the Lighthouse Church main account on or about October 19, 2011. On or about October 24, 2011, Walter Diggles wrote a check on the main Lighthouse Church account to Unindicted Co-conspirator Number One's step-daughter's college in the amount of $2,148.60. Walter Diggles later advised Unindicted Co-conspirator Number One that she should send a thank-you letter to the Lighthouse Church.

53.    In addition to the above, in or about August, 2009, Unindicted Co-conspirator Number Two requested assistance from Walter Diggles in getting medical, funeral, and related travel expenses paid related to Unindicted Co-conspirator Number Two's stepson. Unindicted Co-conspirator Number Two's stepson received medical treatment and later

passed away in Dallas County, far outside of the Deep East Texas region served by

DETCOG. Walter Diggles referred Unindicted Co-conspirator Number Two to the

Foundation for assistance. Unindicted Co-conspirator Number Two approached the

Foundation with her request, and the Foundation submitted the expenses to DETCOG.

Unindicted Co-conspirator Number Two, DETCOG and Walter Diggles approved the

request for reimbursement. DETCOG requested federal SSBG funds from Texas HHSC,

and the Texas Comptroller electronically transferred the funds to DETCOG in the manner

alleged in more detail above. On or about September 18, 2009, the Foundation wrote a

check, payable to the Dallas funeral home in the amount of $6,991.25 for funeral

expenses and wrote a separate check, in the amount of $730.34, to Unindicted Co-

conspirator Number Two's husband. These costs were paid using SSBG federal funds.

On or about September 25, 2009, DETCOG made a check payment of $48,118.55 to the

Foundation; this check included the funeral and travel expenses described above, along

with other unrelated costs.

54.     In addition to the above, in or about January of 2012, Unindicted Co-conspirator

Number Two made a request for payment of SSBG funds in the amount of $30,000.00

for a "job creation program." This amount was to be paid to a company that Unindicted

Co-conspirator Number Two's husband owned. Unindicted Co-conspirator Number Two

made the request by adding a line item to a Foundation SSBG reimbursement request, but

the Foundation packet did not include any documentation showing that the Foundation

had incurred any expense for a job creation program. In spite of this, Walter Diggles

approved payment of SSBG funds in the amount of $10,000.00, and DETCOG

distributed SSBG federal funds to the Foundation in the manner more specifically

described above in this Indictment.  On or about January 7, 2012, Unindicted Co-

conspirators Numbers Three and Four signed a Foundation check in the amount of

$10,000.00 payable to the company owned by the husband of Unindicted Co-conspirator

Number Two.  This check was later endorsed for deposit by Unindicted Co-conspirator

Number Two.

The 2009 Program Closeout

55.     On or about August 7, 2009, Walter Diggles signed a letter as Executive Director

of DETCOG that was addressed and sent to multiple entities in the East Texas region.  In

the letter, Diggles stated that all vendors of DETCOG who had been approved to receive

SSBG funds were eligible to apply for funds that were still available, with a deadline of

August 17, 2009.   After this, Unindicted Co-conspirator Number Three signed a

Foundation request for SSBG reimbursement that was sent to DETCOG.  This request

included requests for reimbursement of the following types of expenses:  payroll for the

Foundation staff for a portion of the calendar year 2008 in the amount of $116,000.00;

$17,877.00 for a fence; $31,879.40 for a computer lab; $47,298 for two vans, which

would be used to transport children to and from the church for after-school and summer

programs; and other items. The fence and computer lab were located on real property

owned by the Lighthouse Church.  After receiving the close-out reimbursement request

from the Foundation, DETCOG and Walter Diggles approved the request for payment of

SSBG federal funds, and on or about October 16, 2009, DETCOG wrote a check

constituted of SSBG federal funds payable to the Foundation in the amount of

$244,000.00.  On or about October 19, 2009, this DETCOG check was deposited into the

Foundation's bank account. After this a Foundation check was prepared made payable to

the Lighthouse Church in the amount of $125,000.00, with the phrase "Loan repayment –

building use" in the memo line.  This Foundation check was written to the Lighthouse

Church despite the fact that the Foundation had already paid $12,000.00 to the

Lighthouse Church for rent for the year 2009.  On or about October 27, 2009, this

$125,000.00 check was deposited into the Lighthouse Church main account.  The deposit

slip for this deposit appears to have been prepared by Walter Diggles.

56.     On or about February 12, 2010, Walter Diggles purchased a certificate of deposit

("CD") from First National Bank – Jasper, using $50,000.00 in funds from the

Lighthouse Church main account, which were a part of the funds resulting from the

$125,000.00 deposit described above.  The CD was in the name of the New Lighthouse

Church of God in Christ c/o Walter Diggles. On or about February 14, 2011, Walter

Diggles cashed in the $50,000.00 CD, depositing $25,375.28 (which included accrued

interest) into the Lighthouse Church main account, and using $25,000.00 to purchase

another CD (in the same name) in the amount of $25,000.00 from First National Bank-

Jasper, Texas.  On or about April 5, 2012, Walter Diggles cashed out the final CD and

deposited the resulting $25,124.51 into the Lighthouse Church main account at First

National Bank-Jasper.

Benefits of the Conspiracy

57.   The conspirators each benefitted financially from the schemes above by receipt of

federal SSBG funds distributed through DETCOG to the Foundation and provided

benefit to others related to them:

    a.   Walter Diggles received the benefit of the SSBG funds that were in the Lighthouse

        Church main account and in the Foundation account by drawing them out of the

        Lighthouse Church main account for personal use; using the funds to make

        payments to or for the benefit of family members; having the Foundation pay for

        improvements to the Lighthouse Church property; having the Foundation pay for

        church utility bills; having the Foundation pay "rent" to the Lighthouse Church;

        making split deposits of funds directly into the Lighthouse Church main account;

        paying credit card bills that he had personally incurred; carrying out the fraudulent

        activities above; and paying personal cell phone bills.  The total of these misused

        SSBG funds was approximately $827,974.00 during the time period in or about

        2007-2012.

    b.   In addition to the above, the Lighthouse Church, of which Walter Diggles was the

        pastor, received substantial improvements and benefits of SSBG funds.  These

        improvements were paid for by the Foundation, which would pay various

contractors and suppliers for the improvements using SSBG funds that it received as a result of sending inflated and false billings to DETCOG. These payments included: $10,516.12 for installation of carpet and flooring in the Lighthouse Church in or about February 2009; $3,450.00 paid to a company for repaving of portions of the Lighthouse Church property in or about July 2008; and $18,000.00 paid to the Lighthouse Church on or about July 9, 2012, with the phrase "Playground repairs" in the memo line. Because the Foundation did not own the real property on which the Lighthouse Church was located, the repairs and improvements to the Lighthouse Church set out above were to the direct benefit of the Lighthouse Church, which owned the real property and the church facilities. The total of the above expenses was $31,966.12.

c. Rosie Diggles received benefit of the SSBG funds in the Lighthouse Church Youth Department account and in the Heart to Heart account by drawing funds out of the Lighthouse Youth Department bank account directly for her personal use; making payments from the Lighthouse Youth Department bank account to benefit various individuals and entities, including relatives, a private school attended by her grandchildren, a church program run by relatives, a church in which relatives served as ministers, other individuals, credit card bills, and otherwise to her benefit; and paying her own cell phone bills in the amount of approximately $12,500.00. The total of these SSBG funds was approximately $236,605 during the time period 2007-2012.

d.  Anita Diggles received benefit of the SSBG funds in the Lighthouse Church Youth Department account and in the Music Department account by drawing funds from the Lighthouse Youth Department for her personal use; receiving payments directly from the Lighthouse Youth Department for her personal use; and making payments for a car note, for medical expenses, and transferring funds to another church bank account for her personal use.  The total of these SSBG funds was approximately $259,308, during the time period in or about 2007-2012.

All in violation of 18 U.S.C. §§ 1349, 1343.

## COUNTS TWO – TWELVE

Violation:  18 U.S.C. § 1343 (wire fraud)

58.     The above paragraphs are incorporated and re-alleged in these counts, as if they were repeated here word for word.

59.     On or about each of the dates set forth below, in the City of Jasper, in the Eastern District of Texas, defendant **Walter Diggles**, aided and abetted by others known to the Grand Jury, for the purpose of executing the scheme described above, knowingly devised and intended to devise a scheme to defraud the United States, and to obtain money and property by means of false and fraudulent material pretenses, representations and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, transmitted and caused  to be transmitted by way of wire communication in interstate commerce writings, signs, and signals described below for each count, each transmission constituting a separate count, and did so with a specific intent to defraud, and further this violation occurred in relation to, and involving a benefit authorized, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster and emergency as those terms are defined in Section102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Ac t (42 U.S.C. § 5122), and affected a financial institution:

| COUNT | DATE (ON OR ABOUT) | TRANSMISSION BY WIRE |
|---|---|---|
| 2 | December 13, 2010 | Email sent by Walter Diggles to employees of the Deep East Texas Council of Governments and the president of the Deep East Texas Foundation, subject line "FW: Copy of DET Foundation Financial Literacy Program.xlsx," recommending reimbursement / payment of SSBG funds to the Deep East Texas Foundation in the total sum of $56,210.00. |
| 3 | January 3, 2011 | Electronic funds transfer by ACH authorization using Check number 3450, of approximately $5,000.00, to FIA Card Services card number ____-____-____-2283, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 4 | January 4, 2011 | Electronic funds transfer by ACH authorization using check number 3448, of approximately $3,873.57, to Chase credit card account number ____-____-____-8504, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 5 | January 21, 2011 | Electronic funds transfer by ACH authorization using check number 3460, of approximately $1,703.08, to Capital One, Inc. credit card account number ____-____-____-5460, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 6 | September 12, 2011 | Electronic funds transfer by ACH authorization using check number 3530, of approximately $766.60, to Capital One, ARC account number ____-____-____-5460, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 7 | September 21, 2011 | Electronic funds transfer by ACH authorization using check number 3535, of approximately $608.52, to Chase credit card account number ____-____-____-8504,  from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |

| COUNT | DATE (ON OR ABOUT) | TRANSMISSION BY WIRE |
|---|---|---|
| 8 | October 21, 2011 | Electronic funds transfer by ACH authorization using check number 3555, of approximately $1,000.00, to Capital One, ARC account number ____-____-____-5460, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 9 | December 14, 2011 | Electronic funds transfer by ACH authorization using check number 3590, of approximately $1,500.00, to Capital One, ARC account number ____-____-____-5460, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 10 | June 5, 2012 | Electronic funds transfer by ACH authorization using check number 3738, of approximately $755.32, to FIA Card Services account number ____-____-____-9854, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 11 | October 16, 2012 | Electronic funds transfer by ACH authorization using check number 3863, of approximately $500.00, to Capital One, ARC account number ____-____-____-8473, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |
| 12 | November 9, 2012 | Electronic funds transfer by ACH authorization using check number 3900, of approximately $2,000.00, to Capital One, ARC account number ____-____-____-8473, from Lighthouse Church main bank account number __8363, for the benefit of Walter Diggles. |

All in violation of 18 U.S.C. § 1343.

## COUNTS THIRTEEN – TWENTY TWO

Violation:  18 U.S.C. § 1343 (wire fraud)

60.     The above paragraphs are incorporated and re-alleged in these counts, as if they were repeated here word for word.

61.     On or about each of the dates set forth below, in the City of Jasper, in the Eastern District of Texas, defendant **Rosie Diggles**, aided and abetted by others known to the Grand Jury, for the purpose of executing the scheme described above, knowingly devised and intended to devise a scheme to defraud the United States, and to obtain money and property by means of false and fraudulent material pretenses, representations and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, transmitted and caused  to be transmitted by way of wire communication in interstate commerce writings, signs, and signals described below for each count, each transmission constituting a separate count, and did so with a specific intent to defraud, and further this violation occurred in relation to, and involving a benefit authorized, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster and emergency as those terms are defined in Section102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Ac t (42 U.S.C. § 5122), and affected a financial institution:

| COUNT | DATE (ON OR ABOUT) | TRANSMISSION BY WIRE |
|---|---|---|
| 13 | December 3, 2010 | Electronic funds transfer of approximately $4,000.00 to Chase credit card account number ____-____-____-8439, from Heart to Heart bank account number __7810, for the benefit of Rosie Diggles. |
| 14 | December 24, 2010 | Electronic funds transfer of approximately $338.44 to Verizon Wireless account number _____1991, from Lighthouse Youth Department bank account number __0815, for the benefit of Rosie Diggles. |
| 15 | January 3, 2011 | Electronic funds transfer of approximately $3,000.00 to Chase credit card account number ____-____-____-8439, from Heart to Heart bank account number __7810, for the benefit of Rosie Diggles. |
| 16 | April 26, 2011 | Electronic funds transfer of approximately $360.85 to Verizon Wireless account number _____1991, from Lighthouse Youth Department bank account number __0815, for the benefit of Rosie Diggles. |
| 17 | June 13, 2011 | Electronic funds transfer of approximately $3,000.00 to Chase credit card account number ____-____-____-8439, from Heart to Heart bank account number __7810, for the benefit of Rosie Diggles. |
| 18 | August 24, 2011 | Electronic funds transfer of approximately $369.67 to Verizon Wireless account number _____1991, from Lighthouse Youth Department bank account number __0815, for the benefit of Rosie Diggles. |
| 19 | August 29, 2011 | Electronic funds transfer of approximately $2,500.00 to Chase credit card account number ____-____-____-8439, from Heart to Heart bank account number __7810, for the benefit of Rosie Diggles. |
| 20 | December 1, 2011 | Electronic funds transfer of approximately $3,000.00 to Chase credit card account number ____-____-____-8439, from Heart to Heart bank account number __7810, for the benefit of Rosie Diggles. |

| COUNT | DATE (ON OR ABOUT) | TRANSMISSION BY WIRE |
|---|---|---|
| 21 | February 24, 2012 | Electronic funds transfer of approximately $362.91 to Verizon Wireless account number _____1991, from Lighthouse Youth Department bank account number __0815, for the benefit of Rosie Diggles. |
| 22 | November 27, 2012 | Electronic funds transfer of approximately $372.66 to Verizon Wireless account number _____1991, from Lighthouse Youth Department bank account number __0815, for the benefit of Rosie Diggles. |

All in violation of 18 U.S.C. § 1343.

## COUNT TWENTY-THREE

> Violation:  18 U.S.C. § 666 (Theft
> concerning programs receiving Federal
> funds)

62.     The above paragraphs are incorporated and re-alleged in this count, as if they were repeated here word for word.

63.     On or about  December 17, 2010, in the Eastern District of Texas, the defendant **Walter Diggles**, aided and abetted by others known to the Grand Jury, being an agent of organization that is a political subdivision of the state of Texas (the Deep East Texas Council of Governments), and said organization receiving in the one year period beginning on or about June 1, 2010, benefits in excess of $10,000 under a Federal program of Social Services Block Grants for the purposes of alleviating needs related to hurricanes, stole, obtained by fraud, without authority knowingly converted to the use of a person not the rightful owner, and intentionally misapplied property worth at least $5,000 and owned by, under the care of, and under the control of  such organization, that is, Social Services Block Grant funds authorized for expenditure by the United States government for hurricane relief, as further alleged above in Paragraphs 44 - 45,

       All in violation of 18 U.S.C. § 666(a)(1)(A).

## COUNT TWENTY-FOUR

> Violation:  18 U.S.C. § 666 (Theft
> concerning programs receiving Federal
> funds)

64.     The above paragraphs are incorporated and re-alleged in this count, as if they were

repeated here word for word.

65.     On or about  July 13, 2012, in the Eastern District of Texas, the defendant **Walter**

**Diggles**, aided and abetted by others known to the Grand Jury, being an agent of

organization that is a political subdivision of the state of Texas (the Deep East Texas

Council of Governments), and said organization receiving in the one year period

beginning on or about January 1, 2012, benefits in excess of $10,000 under a Federal

program of Social Services Block Grants for the purposes of alleviating needs related to

hurricanes, stole, obtained by fraud, without authority knowingly converted to the use of

a person not the rightful owner, and intentionally misapplied property worth at least

$5,000 and owned by, under the care of, and under the control of  such organization, that

is, Social Services Block Grant funds authorized for expenditure by the United States

government for hurricane relief, as further alleged above in Paragraphs 46-48,

     All in violation of 18 U.S.C. § 666(a)(1)(A).

## COUNTS TWENTY-FIVE – TWENTY-SEVEN

Violation:  18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity)

66.     The above paragraphs are incorporated and re-alleged in this count, as if they were repeated here word for word.

67.     On or about each of the dates set forth below, **Walter Diggles**, in the Eastern District of Texas, aided and abetted by others, knowingly engaged, and attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce, in criminally-derived property of a value greater than $10,000.00, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, such property having been derived from specified unlawful activity, that is conspiracy to commit wire fraud as alleged in Count One of this Indictment, knowing that the monetary transactions involved criminally-derived property, and the monetary transactions having taken place within the United States, and as further described below:

| COUNT | DATE (ON OR ABOUT) | MONETARY TRANSACTION | AMOUNT |
|---|---|---|---|
| 25 | December 20, 2010 | Deposit of check number 6510, drawn on Deep East Texas Foundation bank account number _____5293, into Lighthouse Church main account number _____8363, both accounts being held at the First National Bank, Jasper, Texas, and as further alleged in Paragraphs 44 - 45 above. | $39,000.00. |

| COUNT | DATE (ON OR ABOUT) | MONETARY TRANSACTION | AMOUNT |
|---|---|---|---|
| 26 | February 14, 2011 | Deposit of funds resulting from CD cashout, deposited into the Lighthouse Church main account number ____8363 at First National Bank-Jasper, and as further alleged in Paragraphs 55-56 above. | $25,375.28 |
| 27 | April 5, 2012 | Deposit of funds resulting from CD cashout into the Lighthouse Church main account number ____8363 at First National Bank-Jasper, and as further alleged in Paragraphs 55-56 above. | $25,124.51 |

All in violation of 18 U.S.C. § 1957.

## COUNT TWENTY-EIGHT

> Violation:  18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity)

68.    The above paragraphs are incorporated and re-alleged in this count, as if they were repeated here word for word.

69.    On or about September 6, 2011, **Rosie Diggles**, aided and abetted by others, knowingly engaged, and attempted to engage, and caused others to engage, within the Eastern District of Texas, in a monetary transaction affecting interstate commerce, in criminally-derived property of a value greater than $10,000.00, that is, the withdrawal, deposit, and transfer of funds from and to the financial institution identified below, such property having been derived from specified unlawful activity, that is conspiracy to commit wire fraud as alleged in Count One of this Indictment, knowing that the monetary transactions involved criminally-derived property, and the monetary transactions having taken place within the United States, as further described below:

| MONETARY TRANSACTION | AMOUNT |
|---|---|
| Deposit of check number 6919, drawn on Deep East Texas Foundation account number _____5293, into Lighthouse Church Youth Department account number _____0815, both accounts being held at the First National Bank, Jasper, an FDIC-insured institution, as more fully alleged in Paragraphs 28-34 above. | $30,445.65 |

All in violation of 18 U.S.C. § 1957.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

## Pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1) and (2), and 28 U.S.C. § 2461

As the result of committing one or more of the foregoing offenses alleged in this

indictment, the defendants herein, shall forfeit to the United States pursuant to 18 U.S.C.

§§ 981(a)(1)(c) and 982(a)(1) and (2), and 28 U.S.C. § 2461:

1.          any property constituting, or derived from, and proceeds the defendants
            obtained, directly or indirectly, as the result of such violations; and

2.          any of the defendants' property used, or intended to be used, in any manner
            or part, to commit, or to facilitate the commission of, such violations,
            including, but not limited to the following:

### Cash Proceeds

$1,355,853.12 in United States currency and all interest and proceeds traceable
thereto, in that such sum in aggregate is property constituting, or derived from,
proceeds obtained directly or indirectly, as the result of the foregoing offenses
alleged in this indictment.

### Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendants -

(a)     cannot be located upon the exercise of due diligence;
(b)     has been transferred or sold to, or deposited with a third
        person;
(c)     has been placed beyond the jurisdiction of the court;
(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1) and (2), and 28 U.S.C. § 2461.

A TRUE BILL

_____                    12-2-15
GRAND JURY FOREPERSON                          Date

JOHN M. BALES
UNITED STATES ATTORNEY

_____                    12-2-2015
BY: THOMAS E. GIBSON                           Date
Assistant United States Attorney

JAMES NOBLE
Assistant United States Attorney

**Indictment - Page 48**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 9:15cr_____ |
| | § | Judge _____ |
| | § | |
| WALTER DIGGLES (01), | § | |
| ANITA DIGGLES (02), | § | |
| ROSIE DIGGLES (03). | § | |

## NOTICE OF PENALTY

### COUNT ONE

Violation:              18 U.S.C. §§ 1349, 1343 (Conspiracy to commit wire fraud)

Penalty:               Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or both.  If the violation occurred in relation to, and involving a benefit authorized, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster and emergency as those terms are defined in Section102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122), or affected a financial institution, then imprisonment for a term not more than 30 years, a fine not to exceed $1,000,000.00, or both.   A term of supervised release of not more than five years in addition to such term of imprisonment.

Special Assessment:     $100.00

### COUNTS TWO – TWENTY-TWO

Violation:              18 U.S.C. § 1343 (wire fraud)

Indictment - Page 49

| | |
|---|---|
| Penalty: | Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or both.  If the violation occurred in relation to, and involving a benefit authorized, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster and emergency as those terms are defined in Section102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5122), or affected a financial institution, then imprisonment for a term not more than 30 years, a fine not to exceed $1,000,000.00, or both.   A term of supervised release of not more than five years in addition to such term of imprisonment. |
| Special Assessment: | $100.00 |

## COUNTS TWENTY-THREE AND TWENTY-FOUR

| | |
|---|---|
| Violation: | 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds) |
| Penalty: | Imprisonment for a term not more than ten years, a fine not to exceed $250,000.00, or both.  A term of supervised release of not more than three years in addition to such term of imprisonment. |
| Special Assessment: | $100.00 |

## COUNTS TWENTY-FIVE – TWENTY-EIGHT

| | |
|---|---|
| Violation: | 18 U.S.C. § 1957, 18 U.S.C. § 2 (Engaging in monetary transactions in property derived from specified unlawful activity) |
| Penalty: | Imprisonment for a term not more than ten years, a fine not to exceed $250,000.00 or of not more than twice the amount of the criminally derived property |

involved in the transaction, or both.  A term of supervised release of not more than three years in addition to such term of imprisonment.

Special Assessment:          $100.00